UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAMARA CONTRERAS,<br><br>               Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, Performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>               Defendant. | Case No. 2:17-cv-01371-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Tamara Contreras appeals the decision of the Administrative Law Judge ("ALJ") finding her not disabled. Dkt. 1. Ms. Contreras contends the ALJ failed to properly evaluate her fibromyalgia and erroneously rejected the opinion of her treating doctor Khahn Nguyen, specifically his fibromyalgia diagnosis, and improperly evaluated her credibility and lay witness evidence. For the following reasons, the Court recommends **REVERSING** the Commissioner's final decision and **REMANDING** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

On March 12, 2014, Tamara Contreras filed an application for Social Security Disability Insurance benefits. Tr. 19, 75. The application was denied initially and on reconsideration. Tr. 08, 112. Ms. Contreras timely requested an administrative hearing. Tr. 117. On November 12,

REPORT AND RECOMMENDATION - 1

2015, a hearing was held before Administrative Law Judge Mary Gallagher Dilley, and on March 29, 2016, the ALJ issued a decision denying disability benefits. Tr. 19-32, 42-74. Ms. Contreras timely requested review by the Appeals Council. Tr. 159. On July 14, 2017, the Appeals Council denied review. Tr. 1.

Utilizing the five step sequential evaluation process,[1] the ALJ found at step one that Ms. Contreras last worked on June 1, 2013. At steps two and three, the ALJ found Ms. Contreras' left hip degenerative disease and adjustment disorder with depressed mood are severe impairments and that these impairments do not meet the requirements of the Listings. The ALJ also noted an ongoing diagnosis of fibromyalgia but found "fibromyalgia is not an established medically determinable impairment." Tr. 22. At step four, the ALJ found Ms. Contreras retained the residual functional capacity ("RFC") to perform light work with some additional limitations; and at step five, the ALJ found Ms. Contreras could work as a storage facility rental clerk, an officer helper, or mail clerk, and is therefore not disabled. Tr. 16-32.

## DISCUSSION

**A.  ALJ Erred in Concluding Fibromyalgia Diagnosis Did Not Meet Diagnostic Criteria**

Because this case turns largely on whether the ALJ improperly concluded Ms. Contreras' diagnosis of fibromyalgia was not an established medically determinable impairment and therefore did not consider any fibromyalgia-related limitations, it is helpful to understand fibromyalgia. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

that can exacerbate the cycle of pain and fatigue." *Id*. at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id*. (quoting *Yunus*, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id*. The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id*.

SSR 12-p provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. SSR 12-2p, 2012 WL 3104869. Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. *Id*. at *2–3. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence

REPORT AND RECOMMENDATION - 3

that other disorders are not accounting for the pain. *Id*. at *3.[2]

Diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2p recognizes the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." SSR 12-2P, at *6. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider "a longitudinal record whenever possible." *Id*. Under SSR 12-2p, the ALJ must accept a physician's diagnosis of fibromyalgia and find fibromyalgia is a medically determinable impairment if the 2010 ACR Criteria are met and "the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3104869, *2-3.

At step two, the ALJ acknowledged Ms. Contreras was diagnosed with fibromyalgia but concluded the diagnosis did not meet the criteria of SSR 12-2p because there were no tender point findings. The ALJ also noted that during a consultative rheumatology evaluation in June 2014 with Dr. Papadopoulos, MD, there was no evidence of inflammatory arthritis or inflammatory connective tissue disease. Tr. 22. However, the ALJ did not consider Ms. Contreras' fibromyalgia symptoms in light of the 2010 ACR Criteria nor did she consider the longitudinal record of Ms. Contreras' fibromyalgia symptoms. And, as explained further, the lack of evidence of inflammatory arthritis or inflammatory connective tissue disease supports a finding of fibromyalgia rather than undermines it.

---

[2]The Social Security Administration considers any of the following "somatic symptoms" to be manifestations of fibromyalgia: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. SSR 12-2p at *3 n.9.

REPORT AND RECOMMENDATION - 4

Ms. Contreras was diagnosed with fibromyalgia by her treating physician, Khahn Nguyen, MD, who had been treating her for two years prior to this diagnosis. Dr. Nguyen referred Ms. Contreras for further evaluation by Rheumatologist Patricia Papadopoulos, MD, who concurred in the diagnosis. Tr. 418. In her evaluation, Dr. Papadopoulos noted a history of widespread pain and signs and symptoms of fibromyalgia including muscle pain, insomnia, fatigue, headaches, oral ulcers, easy bruising, occasional dizziness, muscle weakness, depression and memory loss. Tr. 418-20. Dr. Papadopoulos also noted the absence of inflammatory arthritis or inflammatory connective tissue disease, and agreed with Dr. Nguyen's diagnosis of fibromyalgia. Tr. 424. Because rheumatology is the relevant specialty for evaluating fibromyalgia, Dr. Papadopoulos' opinion is particularly valuable in determining whether Ms. Contreras meets the diagnostic criteria. *Benecke*, 379 F.3d at 594 n.4. In addition to the diagnoses of Drs. Nguyen and Papadopoulos, Ms. Contreras' medical records reflect repeated manifestations of fibromyalgia symptoms:

(1)   Widespread pain. *See*, *e.g.*, Tr. 369 ("pain descriptors over entire body"), Tr. 418 (noting that Ms. Contreras' pain "[s]tarted in her left neck and shoulders, back, hips and progressed to generalized pain"), Tr. 424 ("long-standing widespread chronic pain"), Tr. 428 (pain diagram showing pain in almost every part of her body), Tr. 624 (same).

(2)   More than six manifestations of fibromyalgia: (1) Muscle pain – Tr. 369, 418, 624; (2) Fatigue – Tr. 277, 285, 378, 419, 428, 430, 484, 543, 559, 577, 605, 610, 626, 652, 718, 741, 744; (3) Waking unrefreshed – Tr. 55, 277, 378; (4) Memory or cognitive problems – Tr. 277, 420, 605, 627, 629; (5) Abdominal pain – Tr. 277, 553, 559, 561, 577, 605, 610, 627, 753; (6) Headaches – Tr. 276, 279, 284, 288, 300, 303, 419, 430, 484, 536, 577, 586, 605, 610, 627, 629, 753, 765; (7) Depression – Tr. 379, 386, 389, 420, 427, 430, 543, 625, 713, 718, 772; (8)

Insomnia – Tr. 277, 350, 420, 430, 630, 741, 750; (9) Easy bruising – Tr. 285, 419, 430, 605, 610, 627; (10) Muscle weakness – 420, 430, 605, 626; (11) Frequent urination – Tr. 285, 453, 553, 561, 569, 576, 625, 750.

  (3) Other causes of symptoms have been excluded. A shoulder x-ray showed no obvious abnormalities. Tr. 398. An MRI of her cervical spine showed minimal degenerative changes. Tr. 424. There was no evidence to suggest an inflammatory condition. Tr. 424. The ALJ stressed the lack of objective medical evidence of any physical impairment aside from Ms. Contreras' left hip impingement. Tr. 22. And Dr. Papadopoulos observed there was "[n]o evidence currently to suggest an inflammatory arthritis or inflammatory connective tissue disease . . . ." As to this latter finding, rather than undermining the fibromyalgia diagnosis as the ALJ mistakenly believed, it appears Dr. Papadopoulos was ruling out other possible causes of Ms. Contreras' symptoms. *See, Jordan v. Northrop Grumman Corp. Welfare Plan*, 370 F.3d 869, 872 (9th Cir. 2004)("Objective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia"), *overruled on other grounds by Abatie v. Alta Health & Life Insurance*, 458 F.3d 955, 970 (9th Cir. 2006); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(" Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."). Thus, the lack of evidence of these other conditions supports rather than undermines the diagnosis of fibromyalgia.

 Dr. Nguyen's diagnosis of fibromyalgia and Dr. Papadopoulus' concurring diagnosis are not directly contradicted by the opinion of any other physician. Dr. Faria did not dispute the diagnosis of fibromyalgia (fibromyalgia is listed under "Impression" in his evaluation) (Tr. 372)

REPORT AND RECOMMENDATION - 6

and Dr. Staley did not specify any diagnoses (Tr. 82-84). The Commissioner also argues Dr. Papadopoulus' opinion does not establish any limitations beyond those included in the ALJ's RFC finding. However, Dr. Papadopoulus' opinion establishes Ms. Contreras' fibromyalgia is a medically determinable impairment and therefore, the ALJ erred in failing to provide valid reasons for rejecting the diagnosis.

The ALJ's error in rejecting fibromyalgia as a medically determinable impairment was not harmless as due to this erroneous finding, the ALJ was legally prohibited from considering limitations arising from Ms. Contreras' fibromyalgia when making her RFC finding. SSR 96-8p, 1996 WL 374184, *2 ("in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). Moreover, the ALJ specifically rejected Dr. Nguyen's opinion that fibromyalgia markedly limited Ms. Contreras' ability to perform basic work activities on the grounds that there was no objective findings to support a fibromyalgia diagnosis. Tr. 29. Hence, there is no basis to conclude, as the Commissioner urges, that the ALJ's RFC determination properly accounted for limitations caused by fibromyalgia. If anything, the record shows the opposite: the ALJ specifically excluded limitations caused by fibromyalgia based upon the erroneous conclusion that the condition was not a medically determinable one.

The ALJ's decision establishes that the only severe physical impairment identified by the ALJ was a hip disorder, and in assessing the credibility of Ms. Contreras' physical symptoms, the ALJ limited her evaluation to Ms. Contreras' hip impairment. AR 21, 24-26. This limited focus was consistent with the ALJ's finding that fibromyalgia was not a medically determinable impairment, but because the ALJ's finding in this regard was erroneous, her RFC finding was "incomplete, flawed, and not supported by substantial evidence in the record." *Hill v. Astrue*, 698

REPORT AND RECOMMENDATION - 7

F.3d 1161 (9th Cir. 2012).

**B.     The ALJ Erred in Rejecting the Opinion of Khahn Nguyen, MD**

Dr. Nguyen has been Ms. Contreras' primary physician since October 2012. Tr. 392. In December 2014, he completed a physical functional evaluation of her ability to work. Tr. 487-89. In his evaluation, he explained Ms. Contreras' fibromyalgia would cause marked interference with her ability to perform work-related activities, and her depression would moderately interfere with her ability to work. Tr. 488. He concluded Ms. Contreras was "severely limited" with respect to her ability to work in a regular and predictable manner and could not meet the demands of even sedentary work. Tr. 489. The ALJ was required to provide specific, legitimate reasons for rejecting Dr. Nguyen's opinion as to Mr. Contreras' ability to work, because this aspect of his assessment was contradicted by other doctors. *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1996).

The ALJ gave "little weight" to Dr. Nguyen's opinion because "[t]here are no objective findings to support a diagnosis of fibromyalgia…." Tr. 29. However, as previously noted, the symptoms of fibromyalgia are entirely subjective, there are no laboratory tests for the presence or severity of fibromyalgia, those suffering from fibromyalgia may show normal muscle strength and neurological reactions, full range of motion, and no synovitis, and the absence of objective findings suggesting a specific physiological cause for a patient's pain is one of the diagnostic criteria for fibromyalgia. *See Rollins,* 261 F.3d at 855; *Sarchet,* 78 F.3d at 306; *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2006)(citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988)); and SSR 12-2p, 2012 WL 3104869, *3 (requiring that other potential causes be excluded). In addition, the ALJ's insistence on tender point findings to support the diagnosis of fibromyalgia is directly contrary to the dictates of SSR 12-2p which

REPORT AND RECOMMENDATION - 8

expressly accepts the 2010 ACR criteria as an alternate basis for the diagnosis.

The ALJ also noted Ms. Contreras is "independent in activities of daily living," but fails to cite to particular activities or explain how those activities contradicted Dr. Nguyen's opinion. Tr. 29. An ALJ must "elaborate on which daily activities conflicted with which part of" the rejected evidence. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (addressing specificity in the credibility context)[emphasis in original]. The Court "may not take a general finding . . . and comb the administrative record to find specific conflicts." *Id*.

The only daily activities identified by the ALJ elsewhere in her decision were personal care, preparing meals, and household chores. Tr. 23. However, because Ms. Contreras can perform all of these activities in the comfort of her own home, at her own pace, on her own schedule, when her symptoms allow, with help from others as needed, and with no oversight or performance expectations, such activities are not comparable to work and do not contradict Dr. Nguyen's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(Quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Dr. Nguyen evaluated Ms. Contreras' ability to perform work-related activities in a regular and predictable manner which refers to her ability to "sustain[] the work level over a normal workday and workweek in an ongoing, appropriate, and independent basis." Tr. 489. The ALJ failed to articulate how performing basic daily activities such as personal grooming,

REPORT AND RECOMMENDATION - 9

preparing a can of soup, or sweeping for 30 minutes demonstrate an ability to work in a regular and predictable manner. Tr 29. Basic activities such as these are not inherently inconsistent with a claim of disability. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Ms. Contreras argues the ALJ also failed to consider how her symptoms limit her daily activities, which are limited and not inconsistent with Dr. Nguyen's opinion– she keeps her activities to a minimum to conserve energy (Tr. 232, 378); she has difficulty dressing herself, getting in and out of bed, and washing herself (Tr. 427); she is usually not dressed until the afternoon and avoids getting dressed and bathing entirely unless she has to leave the house (Tr. 39, 196, 245, 266); she generally does not cook but eats things like cereal, fruits, nuts, and canned soup (Tr. 197); she does basic chores such as laundry, sweeping, and vacuuming an area rug, but she only does such chores for 30 minutes to an hour each, once a week and does not keep a very clean home (Tr. 265-66); everything takes her a long time (Tr. 60); she tries to limit herself to one or two tasks per day (Tr. 245, 266); she has a limited amount of productive hours each day due to her fibromyalgia symptoms (Tr. 610); she schedules activities for the afternoon because she has such difficulty getting ready for the day (Tr. 245); and she needs help "opening jars, carrying in groceries, cleaning, and moving heavy objects" (Tr. 39, 262, 265-67).

In sum the reasons the ALJ gave to reject Dr. Nguyen's fibromyalgia diagnosis are not supported by substantial error and not free of legal error.[3] The ALJ's error is harmful because it resulted in an analysis of Ms. Contreras' RFC that failed to account for her fibromyalgia symptoms singly, or in combination with her other impairments. *See* 20 C.F.R. § 416.945(a) (In

---

[3] The Commissioner also points to Ms. Contreras' trip to Fiji as a reason for rejecting Dr. Nguyen's assessment, but this one-time trip is not a daily activity and was not mentioned by the ALJ as a reason for rejecting Dr. Nguyen's assessment. Tr. 29; Def. Br. at 5. The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 10

determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports, to determine what capacity the claimant has for work.). As such, the ALJ on remand should reassess Dr. Nguyen's opinion and the impact fibromyalgia has on Ms. Contreras' capacity to perform gainful work activity.

**C.      The ALJ Erred in Assessing Ms. Contreras' Testimony**

The ALJ must provide "specific, clear and convincing reasons" for rejecting Ms. Contreras' testimony about her symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony she finds not to be credible and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ's credibility finding focused narrowly on Ms. Contreras' hip pain and mental health. The ALJ did not address the intensity, persistence, and limiting effects of Ms. Contreras' symptoms related to her fibromyalgia such as her back, neck and shoulder pain, slowed pace, and severe fatigue and because the symptoms may be inextricably intertwined, it is recommended that the evidence be reevaluated on remand. For example, the ALJ found Ms. Contreras' hip pain to be inconsistent with the objective findings but in a fibromyalgia case, a lack of objective evidence is immaterial to credibility because the absence of objective findings suggesting a definitive cause for pain and fatigue is a defining feature of fibromyalgia. SSR 12-2p, *3. With respect to her mental health, Ms. Contreras reported moderate levels of depression but explained that this was secondary to her fibromyalgia. Tr. 53, 380, 713.

To the extent Ms. Contreras' complaints of hip pain can be completely isolated for purposes of assessing her symptom testimony, the Court finds the ALJ erred in rejecting Ms. Contreras' reported symptoms. First, the ALJ failed to identify a specific conflict between Ms. Contreras' reported symptoms (needing to change positions after sitting or standing for an hour)

REPORT AND RECOMMENDATION - 11

1 and the clinical findings. Tr. 56-57. In addition, there is objective evidence to support complaints

2 of hip pain – the July 2013 MR arthrogram revealed femoroacetabular impingement of the left

3 hip (Tr. 363), which was not addressed until the surgery in September 2014 (Tr. 481). Thus, even

4 if her hip pain improved thereafter, Ms. Contreras had already met the duration requirement for

5 disability. 20 C.F.R. § 404.1509.

6       The ALJ also rejected Ms. Contreras' account of hip pain because she took a 12-hour

7 airplane trip to Fiji. But travel is not necessarily inconsistent with disability. *Howard v. Heckler*,

8 782 F.2d 1484, 1488 (9th Cir.1986)(ability to engage in periodic travel around the country in a

9 motor home did not justify discrediting complaints of debilitating pain). In addition, context is

10 critical in determining whether a particular trip undermines a claimant's allegations of disabling

11 pain. *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir.1999) (extended road trip not sufficient to

12 counter physicians' opinions that claimant needed to shift positions every thirty minutes or so,

13 where there was an absence of information as to his positioning in the car and the frequency and

14 duration of rest stops). Here, the ALJ reasoned that the extended duration of the flight was

15 inconsistent with Ms. Contreras' report that she could only sit for about an hour but Ms.

16 Contreras testified that she could only sit for an hour before needing to get up and move around.

17 Tr. 56. There is no evidence she was unable to get up and move around on the plane. She

18 testified the "travel was awful" (Tr. 65); on the first flight she had two seats to herself and was

19 able to move around more (Tr. 65-66); the return trip was "a killer" because the plane was full;

20 and when she got home, her symptoms flared (Tr. 65-66). The record also reflects Ms. Contreras

21 has good days and bad days in terms of pain, so her ability to tolerate increased activity on a

22 given day is not necessarily indicative of greater functioning overall. Tr. 389; SSR 12-2p, *5

23 (fibromyalgia symptoms "may vary in severity over time and may even be absent on some

days.").

To the extent there is any validity to the ALJ's reasoning with respect to this one-time trip, it certainly does not rise to the level of a clear and convincing reason for dismissing Ms. Contreras's account of her symptoms. *Burrell v. Colvin,* 775 F.3d 1133, 1140 (9th Cir. 2014) ("one weak reason is insufficient to meet the 'specific, clear and convincing' standard.").[4]

Because the ALJ's credibility finding did not include all of Ms. Contreras' reported symptoms, it is recommended that the ALJ be directed to reassess her testimony on remand.

**D.  The ALJ Erred in Rejecting Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). "Lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence ... and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996) (citations omitted). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Because this evidence reflects the independent observations of third-party witnesses, it is corroborative evidence that is valuable in assessing the credibility of fibromyalgia symptoms. SSR 12-2p at *4; *see also Dodrill*, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering").

1. <u>Cheyenne Contreras</u> wrote that her mother stays in bed 12 to 14 hours a day,

---

[4] Defendant argues that the ALJ found Ms. Contreras failed to comply with prescribed treatment (a therapist's suggestion that she walk in the mall), but the ALJ made no such finding. Tr. 26. The Court may not affirm based on such post-hoc rationalizations. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 13

moves very slowly, and does not get dressed until the afternoon; she has memory problems; needs help with basic activities such as cleaning and carrying groceries; and she does not believe her mother can work full-time. Tr. 39. The ALJ provided no reason to reject Cheyenne Contreras' statement. Tr. 27-29; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)(ALJ may not disregard lay witness testimony without comment).[5]

    2.    <u>Linda Dean</u> described Ms. Contreras as being in constant pain; moving slowly and stiffly; being tired all the time; not doing anything until the afternoon; needing help with basic household chores and shopping; and, being unable to work due to constant pain, and inability to function until the afternoon, and a lack of stamina. Tr. 262. The ALJ described this statement as "vague," but Ms. Dean clearly stated that Ms. Contreras cannot work due to constant pain, a lack of stamina and an inability to function in the morning. The ALJ gave no specific germane reason for rejecting this statement.

    3.    <u>Scott Halvorsen</u> provided details of his daily observations of Ms. Contreras, including difficulties she has with sitting, standing, and walking, cognitive problems, and emotional lability, insomnia, and seeming tired most of the time. Tr. 266. He described how she can get overwhelmed just trying to plan a shopping trip. He explained that "[s]he is in constant pain and chronically fatigued. She cannot fully care for herself, let alone work." *Id.*

The ALJ rejected Mr. Halvorsen's statement as not consistent with objective medical evidence because physical exams indicated a normal gait and mostly full strength and mental status finding show intact memory and concentration. Tr. 28. An ALJ may discount lay testimony that conflicts with medical testimony. *Lewis v. Apfel,* 236 F.3d 503 (9th Cir. 2001).

---

[5] Although Defendant references Ms. Contreras' daughter, the ALJ discussed the statement of a different daughter, Martina Contreras. Dkt. 13; Tr. 28.

1  Here, however, Mr. Halvorsen's statements do not conflict with the weight of the medical

2  evidence as the ALJ narrowly focused only on Ms. Contreras' hip pain and mental health issues.

3  The ALJ provided no specific germane reasons for rejecting Mr. Halvorsen's observations about

4  Ms. Contreras' chronic pain and fatigue, insomnia, or her inability to care for herself or to go to

5  work.

6      4.    <u>Patricia Halvorsen</u> provided a detailed statement of her observations of Ms.

7  Contreras' daily functioning, based on seeing Ms. Contreras two to three times per week for the

8  past year. She reported that Ms. Contreras tires easily; shopping and walking are difficult; she

9  needs help with household chores, yardwork, and lifting and carrying things; she needs a lot of

10  sleep and has difficulty sleeping; she is in bed for twelve or more hours and is not usually

11  dressed until noon; after her surgery Ms. Halvorsen and others helped her with household chores;

12  she no longer works fulltime, cannot maintain her home and yard and does not have much of a

13  social life; due to her low energy level, muscle weakness, inability to sit for an extended length

14  of time, and the amount of sleep she needs, she would not be able to hold down a job. Tr. 267.

15      The ALJ rejected the entirety of Ms. Halvorsen's statement with the comment: "overall

16  the claimant is not limited to the extent suggested by Ms. Halvorsen. Ms. Halvorsen makes no

17  mention of the claimant's trip to Fiji after hip surgery, which supports a higher level of

18  functioning." Tr. 28. This is not a specific, germane reason for rejecting Ms. Halvorsen's

19  observations. Additionally, as described above, the trip to Fiji was not a valid basis for

20  discounting Ms. Contreras' symptoms.

21      In summary, the ALJ's failure to properly analyze all of Ms. Contreras' symptoms – as

22  she described them and as others who know her described them – arises from an apparent

23  fundamental misunderstanding of fibromyalgia, fibromyalgia-related symptoms, and SSR 12-2p.

REPORT AND RECOMMENDATION - 15

To ensure that review of the ALJ's determination of Ms. Contreras' credibility and evaluation of lay witness evidence is not rejected arbitrarily, it is recommended that this evidence be reevaluated on remand in light of Ms. Contreras' fibromyalgia diagnosis and fibromyalgia symptoms.

## CONCLUSION

Based on the foregoing, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The record establishes that fibromyalgia is a severe impairment for purposes of step two. On remand, the ALJ should therefore reassess the impact fibromyalgia has on Ms. Contreras's RFC; reassess Dr. Nguyen's opinion; reassess Ms. Contreras' credibility and the testimony of the lay witnesses; develop the record as needed, and proceed to steps four and five as appropriate.

Any objection to this Report and Recommendation or the attached proposed order must be filed and served no later than **May 30, 2018**. If no objections are filed, the Clerk shall note the matter for **June 1, 2018** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 9th day of May, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 16